UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER S. YOUST,** : | |
|     **Plaintiff,** : | |
| : | |
| v. : | No. 20-cv-3287 |
| : | |
| **OFFICER ERIC LUKACS,** *et al.*, : | |
|     **Defendants.** : | |

**MEMORANDUM**

**Joseph F. Leeson, Jr.**                                                        **July 20, 2021**
**United States District Judge**

      This matter comes before the Court by way of an Amended Complaint submitted by Christopher S. Youst, proceeding *pro se*. (ECF No. 11.) Also before the Court is Youst's Petition to Amend (ECF No. 13) and Youst's proposed Second Amended Complaint (ECF No. 13-1 at 1-20.) For the following reasons, the Court will grant Youst's Petition to Amend, direct the Clerk of Court to docket the proposed Second Amended Complaint (ECF No. 13-1 at 1-20) as a new and separate docket entry in this case entitled "Second Amended Complaint", and Youst's Second Amended Complaint will be dismissed in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and permitted to proceed in part.

**I.    FACTUAL ALLEGATIONS**[1]

      Youst, a former prisoner who was incarcerated at Lancaster County Prison ("LCP"), brings this action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights seeking to assert claims for excessive force, false arrest, false imprisonment, and malicious

---

[1]    The facts set forth in this Memorandum are taken from the proposed Second Amended Complaint Youst submitted to the Court (ECF No. 13-1 at 1-20).

prosecution. (ECF No. 13-1 at 6-10, 17.)[2]  By Memorandum and Order dated November 9, 2020, the Court previously screened Youst's original Complaint (ECF No. 2) pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed Youst's claims as originally pled but granted Youst leave to file an amended complaint in order to cure those pleading deficiencies.[3]  In response to the Court's Memorandum and Order, Youst filed an Amended Complaint (ECF No. 11) on December 15, 2020, and subsequently filed the Petition to Amend (ECF No. 13) seeking leave of Court to file the proposed Second Amended Complaint (ECF No. 13-1 at 1-20).

It is well recognized that an amended pleading, once submitted to the Court, serves as the governing pleading in the case because an amended pleading supersedes the prior pleading. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (per curiam) ("Shahid's amended complaint, however, superseded his initial complaint.") (*citing W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted). Additionally,

---

[2]   The Court adopts the pagination supplied by the CM/ECF docketing system.

[3]   Specifically, the Court dismissed Youst's claims against Magisterial District Judge Jodie Richardson and the Lancaster City Bureau of Police with prejudice on the basis of judicial immunity and because the police department is not a proper defendant in an action brought pursuant to § 1983, respectively. (ECF No. 9 at 6-8.) With respect to Youst's claims arising from an alleged assault on April 26, 2018 by several police officers, the Court dismissed Youst's claims without prejudice as time barred and granted him leave to amend his claims if he could state a timely basis for them. (*Id.* at 10-12.) The Court also dismissed Youst's excessive force claims and false arrest claims without prejudice against Defendant Officer Eric Lukacs related to Youst's arrest on disorderly conduct charges and an alleged assault by Lukacs and other officers on May 16, 2018. (*Id.* at 12-14.) Youst was also granted leave to amend these claims. Finally, the Court dismissed all claims against Defendant Officer Ryan Yoder without prejudice with leave to amend. (*Id.* at 14-15.)

Federal Rule of Civil Procedure 15 provides that leave to amend should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Having reviewed Youst's Petition and his proposed Second Amended Complaint, the Court will grant Youst's Petition to Amend. Youst's proposed Second Amended Complaint (ECF No. 13-1 at 1-20) will be docketed by the Clerk as a new and separate docket entry entitled "Second Amended Complaint". Accordingly, Youst's Second Amended Complaint is now considered the operative pleading in this case. This pleading will be referred to as the Second Amended Complaint throughout the remainder of this Memorandum.

In Youst's Second Amended Complaint, he names the following Defendants: (1) Eric Lukacs, a police officer with the Lancaster City Bureau Police Department; (2) Michael Deitz, a police officer with the Lancaster City Bureau Police Department; (3) Officer Hagen, a police officer with the Lancaster City Bureau Police Department;[4] and (4) the City of Lancaster. (ECF No. 13-1 at 2-3.) Youst asserts that he brings this § 1983 action to "remedy the deprivation" of his rights under the Fourth, Eighth, and Fourteenth Amendments to the Constitution. It appears that Youst's claims arise out of two discrete incidents that occurred on May 16, 2018 and May 18, 2018, respectively.

### A.     May 16, 2018 Incident

Youst alleges that at approximately 12:00 pm on May 16, 2018, he "was walking with his fiancé and her mother and grandmother along the 100 Block of North Queen Street in Lancaster" when he "noticed [Defendant] Officer Lukacs . . . parked along North Queen Street in a marked police vehicle." (*Id.* at 6.) Youst contends that it appeared that Lukacs was "recording [Youst] with his phone." (*Id.*) Youst asserts that he pointed to Lukacs and told his fiancé to look at

---

[4]     The Second Amended Complaint identifies Officer Hagen solely by his last name.

3

Lukacs recording him, at which time Lukacs exited his vehicle and attempted to confront Youst, who had his back to Lukacs. (*Id.*) Youst claims that Lukacs then started following him and "made remarks" to Youst saying "'You think your [sic] a tough guy' and 'Your [sic] showing you're a real man by walking away' and 'why can't you face me like man.'" (*Id.* at 7.)

Youst asserts that Lukacs followed him approximately one block away from where Lukacs was parked, and then told Youst to "stop walking and place his hands on his head." (*Id.*) According to Youst, he followed all of Lukacs's commands during this encounter, and Lukacs proceeded to then conduct a pat down of Youst. (*Id.*) Subsequent to this pat down, Youst alleges that Lukacs "shove[d] [him] roughly into a corner of a [store] vestibule" and "pushed [him] into a cement vase" injuring Youst's right knee. (*Id.*) Youst next asserts that Lukacs "pushed [his] face into a glass [store] window" while also "twisting [his] arm" in order to force Youst to lay down on the wet ground. (*Id.* at 8.) Youst claims that he "begged Lukacs to stop hurting him," in light of his involvement in a car accident several weeks before, but that only caused Lukacs to twist harder. (*Id.*) Youst alleges that sometime later Lukacs's "back-up/partners show[ed] up" – one of whom was Defendant Officer Michael Deitz and another unnamed officer. (*Id.*)

Youst claims that he tried to explain to the officers that he was willing to comply but simply did not want to be forced to sit or lay on the wet ground following rain earlier that day. (*Id.* at 9.) Youst alleges that despite his pleas, "the officers forced [him] down hard [and] then sat on him, one officer on [his] legs and another sitting on [his] head."[5] (*Id.*) Youst asserts that he "began to panic" and could not "breathe normally." (*Id.*) Eventually the "officer sitting on

---

[5] Youst also asserts that neither of the other officers present instructed their partner "not to sit on [Youst's] head" during this incident. (*Id.* at 9.)

[his] head" rose up and off of Youst, at which time Youst realized the "third officer had a taser pointed at" him.[6]  (*Id.*)  Youst alleges that his fiancé recorded this incident on her cellphone and posted the video on YouTube.  (*Id.* at 7, 9.)  Following this encounter, Youst was arrested on charges of disorderly conduct, taken into custody, and then taken to Lancaster Regional Hospital to be treated for his injuries.  (*Id.* at 9, 14.)

      **B.**      **May 18, 2018 Incident**

Youst alleges that on May 18, 2018 he was "walking past 341 N. Queen Street with his fiancé at about 9:20 am" when he was "suddenly surrounded by Lancaster City Police Officers" and that Defendant Officer Hagen took Youst into custody.  (ECF No. 13-1 at 10.)  Youst asserts that a few hours later he was "taken to be arraigned for charges that were filed the day before (May 17, 2018) stemming from the [car] accident that happened on April 26, 2018."[7]  (*Id.*)

---

[6]     Youst does not, however, allege that he was tased at any point during this incident.

[7]     As the Court previously explained in its November 9, 2020, Memorandum, Youst's original Complaint asserted several time-barred claims arising from a serious car accident he was involved in on April 26, 2018.  (ECF No. 9 at 2-3, n.4.)  As a result of the accident, Youst faced multiple criminal charges and ultimately entered a plea of *nolo contendere* to all of them.  When Youst appealed his judgment of sentence, the Superior Court of Pennsylvania described the "facts giving rise to Youst's plea" as follows:

> [O]n or about April 26th of 2018, [Youst] was in operation of a silver Chrysler Sebring when he struck an occupied vehicle causing the victim, Marcia Zamboni, bodily injury and required EMTs and required Ms. Zamboni to be transported to the hospital for treatment.
>
> Additionally, [Youst] did strike three occupied vehicles driven by Glen Hagy, Deborah Guy and Todd Rhoades, as well as an occupied building that being the TW Ponessa counseling services building, which was also occupied at the time.
>
> [Youst] then did exit the vehicle and didn't remain with his vehicle, walked across the street and attempted to blend in with a crowd of onlookers and did not provide his information to the victim or render aid to the victim.

5

Youst also alleges that he was arraigned by Magisterial District Judge Jodie Richardson on May 18, 2018 on a number of charges arising from the April 26, 2018 car accident, and his bail was set at $300,000. (*Id.* at 11.) Following his arraignment, Youst alleges that he was incarcerated at the Lancaster County Prison from May 18, 2018 through November 20, 2018 at which time he was released on "nominal/unsecured bail." (*Id.*)

Based on these allegations regarding the May 16, 2018 and May 18, 2018 incidents, Youst alleges that he suffered from swelling, cuts, abrasions, bruising, and scaring on his hands, legs, and arms – as well as nerve damage. (*Id.* at 18.) He also seeks monetary damages in the amount of $500,000, as well as an order declaring that the Defendants violated his Constitutional rights, and an order of protection against the Lancaster City Bureau Police Department and the individual Defendants to stop further abuse. (*Id.* at 17- 19.)

---

> Additionally, Your Honor [Youst] did drive on the sidewalk prior to striking the TW Ponessa Building and caused damage two unattended vehicles, first belonging to Hertz Rental Company leased by Christian Calero, and the second vehicle being owned by Valerie Subatin. [Youst] also struck light poles owned by PPL, as well as two parking meters owned by the City of Lancaster.
>
> [Youst] did resist arrest when police officers eventually met up with [Youst], requiring Sergeant Lopez, Lieutenant Smith, Detective Smith, Detective McCready and Sergeant Mummau to create a substantial risk of bodily injury and required those public servants to employ means justifying substantial force to overcome [Youst's] resistance. That was in the course of effectuating a lawful arrest.
>
> Additionally, [Youst's] driving privileges were suspended or revoked at the time.
>
> And finally, [Youst] did have a gray and white pit bull puppy located in his vehicle when he flipped his vehicle, causing the dog to be treated for possible injuries. This placed the dog in imminent risk of serious bodily injury.

*Commonwealth v. Youst*, App. No. 1774 MDA 2019, 2020 WL 7334366, at *1 (Pa. Super. Ct. Dec. 14, 2020) (alterations in original).

## II. STANDARD OF REVIEW

As Youst is proceeding *in forma pauperis*, his Second Amended Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which requires the Court to dismiss the Second Amended Complaint if, among other things, it fails to state a claim. As the Court has previously explained, whether the Second Amended Complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Second Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations and generalized statements do not suffice to state a claim. *See id.* As Youst is proceeding *pro se*, the Court construes the allegations set forth in the Second Amended Complaint liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

In the Second Amended Complaint, Youst again brings claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Moreover, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

### A. Claims against the City of Lancaster & Official Capacity Claims

Youst names the City of Lancaster as a Defendant in the Second Amended Complaint and asserts that the City "should be held accountable on behalf of Eric Lukacs, Michael Dietz, and Officer Hagen under the theory of municipal liability, for failure to adequately train, . . . supervise, reprimand or/and investigate Defendants, and for its customs, policies and/or practices[.]" (ECF No. 13-1 at 17.) As the Court previously set forth in its November 9, 2020 Memorandum, to plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

Alternatively, a plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* Moreover, claims against city officials named in their official capacity are indistinguishable from claims against the city. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). In other words, Youst's official capacity claims against the Officers are effectively claims against the municipality. *See Id.* at 166 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

As with his original Complaint, despite the opportunity to amend, Youst's Second Amended Complaint fails to plead sufficient facts to state a plausible *Monell* claim. Youst does not specify the exact custom or policy that he alleges resulted in a violation of his constitutional rights, s*ee McTernan*, 564 F.3d at 658, nor does Youst allege adequate facts to demonstrate that the City failed to supervise, train, or discipline these Officers in a manner that amounts to municipal deliberate indifference to his Constitutional rights. *See Forrest*, 903 F.3d at 106. Rather, Youst simply reiterates the legal standard the Court previously outlined. He does not allege any factual allegations in support of such claims or assert new details related to the City's policies or customs. Having permitted Youst a prior opportunity to amend any potential *Monell*

9

claim against the City and his official capacity claims against the officers, and it appearing that any further attempt at amendment would be futile, these claims will be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile."); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story").  Accordingly, Youst's claims Defendant the City of Lancaster and his official capacity claims against the officers are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Clerk is directed to terminate the City of Lancaster as a Defendant in this matter.

      **B.**      **Claims Arising from May 18, 2018 Incident**

Youst's Second Amended Complaint sets forth three distinct Counts in the "Claim Statement." (ECF No. 13-1 at 12-15.)  Count One relates to the incident that occurred on May 18, 2018, and is entitled "Bodily Integrity/Kidnapping/Unlawful Arrest[.]" (*Id.* at 12.)  In Count One, Youst asserts that the Defendants violated his Fourth and Fourteenth Amendment rights when they "unlawfully arrested/detained him on May 18, 2018, for not obeying a summons that was allegedly issued for charges that were filed on May 17, 2018." (*Id.*)  Youst specifically alleges that the Defendants "obtained and executed an unsigned arrest warrant" that related to his charges stemming from the April 26, 2018 car accident. (*Id.*)  Youst further contends that when the "Defendants arrested/detained [him] on May 18, 2018, they should've known that the arrest

warrant being executed was not signed by a magistrate and that the charges were filed the day before the arrest which violates" various Pennsylvania statutes. (*Id.* at 13.)

With respect to the April 26, 2018 car accident, public records reflect that Youst was charged with 13 separate criminal charges[8] by way of a criminal complaint dated May 17, 2018 and was arrested and arraigned on those charges the following day, May 18, 2018, at which time bail was set at $300,000. *See Commonwealth v. Youst*, CP-36-CR-0003167-2018 (Lancaster Cty. Ct. of Common Pleas at 1, 3). The docket for Youst's state court criminal matter also reflects that Youst entered a plea of *nolo contendere* to all of these charges on July 8, 2019 and was sentenced to an aggregate term of no more than 23 months of incarceration with immediate parole and restitution in the amount of $61,479.67, plus fines and costs. *See id.* at 5-7, 29. Youst's Judgment of Sentence was subsequently affirmed on appeal. *See Commonwealth v. Youst*, 245 A.3d 1063, 1063-1064 (Pa. Super. Ct. Dec. 14, 2020).

Count One of Youst's Second Amended Complaint is clearly challenging the circumstances of Youst's May 18, 2018 encounter with police that ended in Youst's arrest and detention related to the charges stemming from the April 26, 2018 car accident. (*See* ECF No. 13-1 at 13 ("Defendants arrested/detained [Youst] on May 18, 2018"); *see also id.* at 11 (alleging that after Youst was arrested and arraigned on May 18, 2018, "he spent from May 18, 2018, until November 20, 2018, at the Lancaster County" Prison)). Although Youst couches his claims in terms of his "unlawful arrest" – the Court is not bound by his classification of his claims, and

---

[8] As a result of the April 26, 2018 car accident, Youst was charged with one count of "accidents involving death or personal injury while not properly licensed; four counts of accidents involving damage to attended vehicle or property; driving upon sidewalk; four counts of accidents involving damage to unattended vehicle or property; driving while operating privilege is suspended or revoked; resisting arrest; and cruelty to animal[s]." *Commonwealth v. Youst*, App. No. 1774 MDA 2019, 2020 WL 7334366, at *1 (Pa. Super. Ct. Dec. 14, 2020).

11

understands Youst's claims to be more appropriately construed as claims for malicious prosecution as set forth more fully below.  *Cf. Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) (recognizing that when reviewing a *pro se* complaint, the court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name.").

As the Third Circuit has recognized, "[t]he dividing line between false arrest/imprisonment claims and malicious prosecution claims is the initiation of legal process. Arrests made pursuant to a 'validly issued – if not validly supported – arrest warrant' generally occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment."  *Noviho v. Lancaster Cty. of Pennsylvania*, 683 F. App'x 160, 166 (3d Cir. 2017) (quoting *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013)); *see also Morales v. Busbee*, 972 F. Supp. 254, 266 (D.N.J. 1997) ("The 'legal process' that separates a false arrest/imprisonment claim from a malicious prosecution claim may be in the form of an arrest warrant, an arraignment, or an indictment.").

Here, a review of the Second Amended Complaint and the public records in his criminal case make clear that Youst's state court criminal case was initiated by the filing of the criminal complaint on May 17, 2018, and that he was arrested on May 18, 2018 pursuant to a warrant that issued after the filing of the criminal complaint.  Because Youst was "detained pursuant to legal process, . . . his false arrest/imprisonment § 1983 claims all actually sound in malicious prosecution[.]"  *See Noviho*, 683 F. App'x at 166 (explaining that "a Pennsylvania 'court case' is initiated by 'the filing of a complaint, *followed by* the issuance of a summons or arrest

12

warrant[]'" and concluding that plaintiff's false arrest and imprisonment claims were actually malicious prosecution claims) (emphasis in original, citation omitted).

However, Youst's claims seeking to challenge the constitutionality of his prosecution arising out of his May 18, 2018 arrest are not cognizable in a civil rights action at this time. That is because, "to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)). "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487.

A judgment in favor of Youst on this malicious prosecution claim would necessarily imply the invalidity of his conviction for the charges from the April 26, 2018 car accident. It is clear that Youst's state criminal prosecution did not terminate favorably for him because records show that the criminal charges were resolved by way of a plea of *nolo contendere* Youst entered

13

into on July 8, 2019. *See Commonwealth v. Youst*, CP-36-CR-0003167-2018 (Lancaster Cty. Ct. of Common Pleas at 5-7). His convictions remain intact and have not thus far been invalidated.[9] As a result, Youst's claims are not cognizable in a civil rights action at this time. *See Nash v. Kenney*, 784 F. App'x 54, 57 (3d Cir. 2019) (per curiam) ("Nash's malicious-prosecution and speedy-trial claims -- which challenge his post-arraignment detainment -- are barred by the favorable-termination rule of [*Heck*]."); *Floyd v. Attorney Gen. of Pennsylvania*, 722 F. App'x 112, 114 (3d Cir. 2018) (*per curiam*) ("Because Floyd's malicious prosecution and fabrication of evidence claims do not accrue until the criminal proceedings have terminated in Floyd's favor, and Floyd has not demonstrated as much, they are barred by *Heck*."); *Brown v. City of Philadelphia*, 339 F. App'x 143, 146 n.2 (3d Cir. 2009) ("Because Brown alleges that his detention is pursuant to a warrant, his claim likely is in the nature of a claim for malicious prosecution (rather than false arrest or false imprisonment), which must await the termination of proceedings in his favor."). Accordingly, such claims are dismissed without prejudice to Youst's ability to file a new case only in the event his convictions are first invalidated.[10]

---

[9] As the Court previously pointed out, Youst's Judgment of Sentence was affirmed on appeal. *See Commonwealth v. Youst*, 245 A.3d 1063, 1063-1064 (Pa. Super. Ct. Dec. 14, 2020). Additionally, by Order dated June 8, 2021, the Pennsylvania Supreme Court denied Youst's petition for allowance of an appeal from the Superior Court's Order affirming his Judgement of Sentence. *See Commonwealth v. Youst*, 13 MAL 2021, 2021 WL 2327816, at *1 (Pa. June 8, 2021).

[10] With respect to Defendant Officer Hagen, the only allegation against this officer in the Second Amended Complaint is that "it was Officer Hagen . . . that took [Youst] into custody" on May 18, 2018. In light of the dismissal of all of Youst's claims arising from the May 18, 2018 arrest, the Court will direct the Clerk to terminate Officer Hagen as a Defendant in this matter.

### C.      Claims Arising from May 16, 2018 Incident

#### 1.      Excessive Force

With respect to Count Two, the Court also understands Youst's Second Amended Complaint to bring claims against Defendants Lukacs and Deitz for excessive force in violation of the Fourth Amendment.[11] The Fourth Amendment prohibits a law enforcement officer from using "excessive force in the course of making an arrest, investigatory stop, or other 'seizure.'" *Graham v. Connor*, 490 U.S. 386, 388 (1989). "'Seizure' alone is not enough for § 1983 liability; the seizure" – including the force used to effect the seizure – "must be 'unreasonable.'" *Brower v. Inyo Cty.*, 489 U.S. 593, 599 (1989). To determine whether an officer's use of force was unreasonable, "a court must consider[ ] all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004). This includes an examination of "'the facts and circumstances of each particular case, ... the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or

---

[11] In Counts Two and Three of the Complaint, which concern the May 16, 2018 incident, Youst also mentions the Fifth, Eighth, and Fourteenth Amendments. Since none of the Defendants are federal actors, the Fifth Amendment is not implicated here. *See Mutschler v. SCI Albion CHCA Health Care*, 445 F. App'x 617, 621 (3d Cir. 2011) (per curiam) (citing *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)). The Eighth Amendment prohibits excessive bail or fines and prohibits cruel and unusual punishment of convicted and sentenced inmates; it has no apparent application here. *See* U.S. Const. VIII; *Hubbard v. Taylor*, 399 F.3d 150, 165-66 (3d Cir. 2005). The Fourteenth Amendment is also inapplicable to Youst's claims, since they fall exclusively under the Fourth Amendment. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 919 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." ); *Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."); *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding "that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach").

attempting to evade arrest by flight.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (citations omitted).

With respect to Youst's May 16, 2018 encounter with police, Youst alleges despite complying with all of Defendant Officer Lukacs's commands, Lukacs "shove[d] [him] roughly into a corner of a [store] vestibule" and "pushed [him] into a cement vase" injuring Youst's right knee.  (ECF No. 13-1 at 7.)  Youst also next asserts that Lukacs "pushed [his] face into a glass [store] window" and twisted Youst's arm in order to force Youst on the ground.  (*Id.* at 8.)  Youst claims that he "begged Lukacs to stop hurting him" but his pleas only caused Lukacs to twist his arm even harder.  (*Id.*)  Youst further alleges that when Defendant Officer Deitz and an unnamed officer arrived on the scene as back-up, "the officers forced [him] down hard [and] then sat on him, one office on [his] legs and another sitting on [his] head."  (*Id.* at 9.)  Youst asserts that he "began to panic" and could not "breathe normally."  (*Id.*)  Following this encounter, Youst alleges that he was taken to Lancaster Regional Hospital to be treated for his injuries.  (*Id.* at 9, 14.)

Although "[n]ot every push or shove … violates the Fourth Amendment[,]" *see Graham*, 490 U.S. at 396, the facts alleged in the Second Amended Complaint, which the Court must accept as true, indicate that Youst did not pose an immediate threat to the officers' safety at the time of the May 16, 2018.  Nor does it appear based on the facts alleged in the Second Amended Complaint that Youst was noncompliant or actively trying to resist arrest or evade the police at the time the force was applied here.  Construing Youst's Second Amended Complaint liberally and accepting his allegations as true, the Court finds that the Second Amended Complaint contains sufficient factual matter to state a plausible claim for excessive force against

these Officers with respect to his May 16, 2018 arrest. *See Iqbal*, 556 U.S. at 678. Accordingly, this claim is permitted to proceed.

### 2. False Arrest

Count Two and Count Three of Youst's Second Amended Complaint also seeks to bring a claim for false arrest relating to Youst's disorderly conduct charges from May 16, 2018.[12] (ECF No. 13-1 at 14-16.) The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To state a claim for false arrest under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483.

In the Second Amended Complaint, Youst explicitly asserts that "Defendants lacked probable cause to arrest or charge [him] for disorderly conduct" on May 16, 2018. (ECF No. 13-1 at 14.) He essentially alleges that the officers filed the disorderly conduct charges against him simply to "justify [their] illegal actions" in the use of force against Youst that day. (*Id.* at 16.) Under the relevant portion of Pennsylvania law, "[a] person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa. Cons. Stat. § 5503(a)(4).

---

[12] The Court takes judicial notice that Youst was charged with two disorderly conducts charges related to his May 16, 2018 arrest and is currently awaiting trial on these charges. *See Commonwealth v. Youst*, CP-36-CR-0004162-2018 (Lancaster Cty. Ct. of Common Pleas).

Youst alleges that at approximately 12:00 pm on May 16, 2018, he "was walking with his fiancé and her mother and grandmother along the 100 Block of North Queen Street in Lancaster" when he "noticed [Defendant] Officer Lukacs . . . parked along North Queen Street in a marked police vehicle." (ECF No. 13-1 at 6.)  Youst contends that it appeared that Lukacs was "recording [Youst] with his phone." (*Id.*)  Youst asserts that he pointed to Lukacs and told his fiancé to look at Lukacs recording him, at which time Lukacs exited his vehicle and attempted to confront Youst, who had his back to Lukacs.  (*Id.*)  Youst claims that Lukacs then started following him and "made remarks" to Youst saying "'You think your [sic] a tough guy' and 'Your [sic] showing you're a real man by walking away' and 'why can't you face me like man.'" (*Id.* at 7.)  Accordingly to Youst's telling, these are the circumstances that led to his arrest for disorderly conduct on May 16, 2018, and support his contention that the officer's lacked probable cause to arrest him on that charge.  Accepting Youst's factual allegations as true and construing his Second Amended Complaint liberally, the Court permits Youst to proceed on his false arrest claim arising out of his May 16, 2018 arrest for disorderly conduct. [13]

**IV.    CONCLUSION**

For the foregoing reasons, the Court dismisses the Second Amended Complaint in part pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim and permits it to proceed in part.  Youst's claims against the City of Lancaster and his official capacity claims are dismissed with prejudice.  Youst's claims challenging the charges and sentencing arising from the April 26,

---

[13]    Although the Court will allow Youst to proceed on this claim of false arrest arising from the May 16, 2018 arrest, the Court makes no determination regarding the existence of probable cause at the time of Youst's arrest.

2018 car accident and his arrest on May 18, 2018 are dismissed without prejudice.[14]  The Court directs service of the Second Amended Complaint on Defendants Lukacs and Deitz with respect to Youst's false arrest and excessive force claims arising out of the May 16, 2018 incident.  An appropriate Order follows.

                              **BY THE COURT:**

                              */s/ Joseph F. Leeson, Jr.*
                              **JOSEPH F. LEESON, JR.**
                              **United States District Judge**

---

[14]  The dismissal is without prejudice to Youst filing a new case only in the event his underlying conviction is reversed, vacated, or otherwise invalidated.